STARNES v. RAILROAD.

(*Jackson.*   May 26, 1892.)

1. COMMON CARRIER.   *Contract fixing value of live-stock shipped, valid.*

Doctrine re-affirmed that a stipulation in a bill of lading for the ship-
ment of live-stock, fixing values of the animals delivered for trans-
portation, is valid, if fair and reasonable in itself, · based upon a
sufficient consideration, and freely and understandingly assented to
by the shipper, although the values thus fixed are materially less than
those shown by the proof.

Cases cited and approved: Railroad v. Sowell, 90 Tenn., 17; Railroad
v. Wynn, 88 Tenn., 330; 112 U. S., 331.

2. SAME.   *Construction of clause limiting value of live animals.*

Bill of lading for shipment of live-stock provided that in the event
damage should occur for which the carrier would be liable, "the
value at the place and date of shipment shall govern the settlement,
in which the amount claimed shall not exceed, for a stallion or jack,
$200; for a horse or mule, $100;   *   *   *   which amounts, it is
agreed, are as much as such stock as are herein agreed to be trans-
ported are reasonably worth."   The proof showed that the thirteen
horses shipped were worth, at date and place of shipment, from $130
to $235 each; and that nine of these were injured in course of trans-
portation.   Of the injured horses one died, and the value of the
other eight were impaired from $25 to $100 each.   All the injured
horses brought over $100, except one that brought $90.   The Court
instructed the jury that the shipper could recover only $100 for the
dead horse, and $10 for the injured horse that brought only $90.

*Held:*   Court's instructions are erroneous.   Under said contract, the
carrier was liable for damage done each horse to the extent of $100,
. without regard to his value after receiving the injury.

FROM SHELBY.

Appeal in error from Circuit Court of Shelby
County.   L. H. ESTES, J.

W. L. CLAPP and METCALF & WALKER for Starnes.

J. P. HOUSTON and McCORRY & BOND for Railroad.

CALDWELL, J. In June, 1889, J. W. Starnes delivered to the Louisville and Nashville Railroad Company, as a common carrier, thirteen horses, to be transported by rail from Lexington, Kentucky, to Memphis, Tennessee.

This action was brought by Starnes against the carrier to recover damages for injuries alleged to have been received by the stock in course of transportation.

Plaintiff claimed that he had been damaged to the extent of $450, and sued for that amount. Court and jury allowed him a recovery for only $110, with interest, and he appealed in error.

The horses cost the plaintiff, and were worth at place of shipment, $130 to $235 each. After much delay and circuity of route, they reached their destination, nine of them being in a damaged condition. One of the nine died the next day after arrival, and the other eight were impaired in value from $25 to $100 each.

The horses were bought for sale on the Memphis market, and, there, those that survived were sold, at such prices as could be had by the exercise of due care and diligence. Eleven were sold for various sums above $100 each, and one was sold for $90.

The shipment was made under a "live-stock contract," which contained the following stipulation: "And it is further agreed that should damage occur for which the said party of the first part may be liable, the value at the place and date of shipment shall govern the settlement, in which the amount claimed shall not exceed, for a stallion or jack, $200; for a horse or mule, $100; * * * which amounts, it is agreed, are as much as such stock as are herein agreed to be transported are reasonably worth." This is a valid limitation of the liability of the carrier. *Railway Company* v. *Sowell,* 6 Pickle, 17; *Railway Company* v. *Wynn,* 4 Pickle, 330; *Hart* v. *Penn. Railroad Company,* 112 U. S., 331.

With reference to it the trial Judge said to the jury: "This clause fixes the value of the stock at the point and date of shipment. So that, if you find from the evidence that any of the stock brought more than or as much as the agreed value of $100 each, then the Court charges you there can be no recovery in this case for such stock as sold for $100 per head."

Upon this instruction the jury returned a verdict for $100 as damages for the horse that died, and for $10 as damages for injuries to the one that sold for $90; but refused a recovery for injuries to those which sold for as much as $100 each. In other words, the jury did their plain duty, and applied the law, as given them by the Court, to the facts of the case.

But it is contended, and we agree, that the instruction was erroneous. The Court at this point should have told the jury that the stipulation limited the liability of the defendant to $100 for each animal injured or killed, and that they should assess the damages according to the real injury caused by the carrier's negligence, in no instance exceeding $100 per head.

The question is not, what did each animal bring in the market in its injured condition; but, rather, to what extent and in what amount, not above $100, was it damaged through the fault of the defendant. Not what value is left in the animal, but what elements of value were wrongfully taken away. To illustrate: A horse shipped under such a contract loses one eye through the negligence of the carrier, and the owner sues for damages. The question, in such a case, is, How much has the animal been damaged by the loss of the eye? and not, Will he sell for as much as $100 with but one eye?

The agreement is that the carrier shall not be liable for more than the $100 in case of damage; not that no liability shall attach if the horse, though injured, should sell for as much as that sum.

The true measure of liability, under the contract, is the amount of actual damage resulting from the negligence of the carrier, in no case to exceed the sum stipulated. This is the most natural and reasonable construction of the contract; it is fair and just to both parties. A shipper

will not be heard to claim a recovery for dam-age or loss, however great, in excess of amount named in the bill of lading as the agreed value; nor will the carrier be allowed to deny liability for actual damage up to that amount. "The carrier must respond for negligence up to that value," but no further. 112 U. S., 341 and 343.

Reverse and remand.