(156 App. Div. 525.)

## UNITED LEAD CO. v. LEHIGH VALLEY R. CO.

(Supreme Court, Appellate Division, First Department.  May 2, 1913.)

1. CARRIERS (§ 158*)—LIMITATION OF LIABILITY—VALUATION.

Defendant, a common carrier, engaged in interstate commerce, pursuant to Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), had published and filed a rate on pig tin from New York to Chicago of 23 cents per 100 pounds for car load lots only, "released to valuation of $100 per ton, * * * to be shown on bills of lading and shippers' invoice," and a rate of 30 cents per 100 without any limitation of liability.  Plaintiff shipped a car load of pig tin, chose the lower rate, and signed a bill of lading providing that, to enable the carrier to apply the proper published rate, the shipper thereby declared that in case of loss it would not assert claims against the defendant on a higher basis of value than $100 per ton.  Forty pigs, weighing 4,150 pounds and valued at $1,600, were lost.  Held, that the shipper was bound to take notice of the carrier's filed rates, that the bill of lading did not conflict therewith, but was simply explanatory thereof, that it applied to each part of the shipment, and not only to car load lots, that it was lawful, because within the published rates, and was conclusive upon the rights of the parties.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 663–667, 699–703½, 708–710, 718, 718½; Dec. Dig. § 158.*]

2. CARRIERS (§ 158*) — LIMITATION OF LIABILITY — LOWER RATE — CARMACK AMENDMENT.

An agreement that an interstate carrier's liability for loss of goods shipped should be determined according to the lower of two published rates, selected by the shipper, was not in violation of or prohibited by the Carmack amendment of June 29, 1906 (34 Stat. 593, c. 3591, § 7 [U. S. Comp. St. Supp. 1911, p. 1307]), to the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, § 20, 24 Stat. 386 [U. S. Comp. St. 1901, p. 3169]), providing that no contract, receipt, etc., should exempt an interstate carrier from the liability thereby imposed.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 663–667, 699–703½, 708–710, 718, 718½; Dec. Dig. § 158.*]

Submission of a controversy by the United Lead Company against the Lehigh Valley Railroad Company, under section 1279 of the Code of Civil Procedure.  Judgment ordered for plaintiff.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Arthur W. Clement, of New York City, for plaintiff.
Stewart C. Pratt, of New York City, for defendant.

McLAUGHLIN, J.  [1] The defendant, a common carrier engaged in interstate commerce, on the 19th of September, 1911, accepted from the plaintiff, at New York, for the purpose of transporting to Chicago, a car load of pig tin, consisting of 320 pigs of substantially the same size, weighing 33,662 pounds.  Forty of the pigs, weighing 4,150 pounds, were lost in transit.  Prior to the shipment defendant, pursuant to the Interstate Commerce Act, had published and filed rates applicable to the transportation of pig tin from New York to Chicago.  Un-

der such rates 23 cents per 100 pounds was fixed for car load lots only, "released to valuation of $100 per ton of 2,000 pounds, to be shown on bills of lading and shippers' invoice," and 30 cents per 100 without any limitation of liability.

At the time the shipment was made the plaintiff was afforded an opportunity to ship at either rate, and it chose the lower and paid the freight charges accordingly, which amounted to $82.80. After it had selected that rate, and before the shipment was made, it accepted and signed a bill of lading upon which was stamped the following:

"For the purpose of enabling the carrier to apply proper published rate, as explained in its tariff, we hereby declare that in case of loss or damage to the property herein described we will not assert claim against the carrier on a higher basis of value than $100 per ton."

The actual value of the tin lost was $1,608.13, which sum the plaintiff claims it is entitled to recover, while the defendant contends it is only liable at the rate of $100 for each ton or fraction thereof lost, or $207.50.

The valuation declared or agreed upon, as evidenced by the contract of shipment upon which the published tariff rate was applied, is conclusive between the parties. Where there are two rates, based upon valuation, then the valuation which the shipper declares is the one applicable, and if such rate be filed, as required by law, the shipper is bound to take notice of it, whether called to his attention or not. Kansas City S. Ry. Co. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. ——; Gardiner v. N. Y. C. & H. R. R. Co., 201 N. Y. 387, 94 N. E. 876, 34 L. R. A. (N. S.) 826, Ann. Cas. 1912B, 281.

The bill of lading does not conflict with the defendant's published rate. It is simply explanatory of the rate, and the rights of the parties, therefore, are determined by it. Clauses in bills of lading, not in conflict with the published rate, limiting a common carrier's liability, are lawful (Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. ——; Greenwald v. Barrett, 199 N. Y. 170, 92 N. E. 218, 35 L. R. A. [N. S.] 971), and when the rates for shipment are fixed according to valuation, such valuation applies to each part of the cargo and not to the whole cargo (Kansas City S. Ry. Co. v. Carl, supra). The plaintiff expressly agreed, when it shipped by the lower rate, that in case of loss or damage it would not assert a claim—that is, that the defendant should not be liable—to exceed $100 per ton for the tin lost or damaged.

Defendant had a right to enter into this agreement, because, as indicated, it did not conflict with the published rate. Plaintiff, however, contends it could only ship, under the rate which it accepted, an entire car load, which, in the present case, according to the submission, was of the value of $1,800; that therefore it is entitled to recover the full value of the tin lost so long as it does not exceed the value of the entire car load. In my opinion this is not a fair construction to be put upon the published rate, supplemented and explained as it was, by the clause stamped upon the bill of lading.

In Kansas City S. Ry. Co. v. Carl, supra, the shipment consisted of two boxes and one barrel containing "household goods." On the bill

of lading was written, "O. R. Val. 5.00 cwt.," which meant "Owner's released valuation $5 per hundredweight." One of the boxes was never delivered, and action was brought to recover its value. A recovery was had for the full value against the shipper, which was reversed; the court saying:

"In the light of the published tariffs and of the rate applied to this shipment, the two papers read together plainly mean that the household goods included in the two boxes and one barrel were valued, for the purpose of coming under the lower rate, at $5 per hundred."

The rule there laid down is directly applicable to the case here under consideration, and, when applied, the plaintiff is entitled to recover at the rate of $100 for each ton or fraction thereof lost.

[2] The agreement that the liability, in case of loss, should be fixed or determined according to the rate selected, was not in violation of or prohibited by the Carmack amendment of June 29, 1906 (Act June 29, 1906, c. 3591, § 7, 34 Stat. 593 [U. S. Comp. St. Supp. 1911, p. 1307]). Missouri, K. & T. R. Co. v. Harriman Bros., 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. ——; Kansas City S. Ry. Co. v. Carl, supra.

Attention is called to the decision of this court in Carleton v. Union Transfer & Storage Co., 137 App. Div. 225, 121 N. Y. Supp. 997, and it is urged that the views here expressed are in conflict with that decision. The facts are quite different. There the shipment consisted of furniture, pieces of different value, none of which were lost, but damaged in transit. Questions involving interstate commerce, as this one does, are regulated and controlled by the federal statutes, and, when they have been construed by the Supreme Court of the United States, such construction is binding upon the state courts. If that decision cannot be distinguished from this one, then it is in conflict with the last two authorities cited from the Supreme Court of the United States, and it is the duty of this court to follow such decisions, instead of one of its own prior decisions in conflict therewith.

It follows, therefore, that the plaintiff is entitled to judgment against the defendant for $207.50 and interest thereon from December 1, 1911, without costs.

INGRAHAM, P. J., and DOWLING and HOTCHKISS, JJ., concur. LAUGHLIN, J., concurs in result.